IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHEMTOV MICHTAVI, | : | CIVIL ACTION NO. **4:CV-06-0628** |
| Plaintiff | : | (Judge Jones) |
| v. | : | (Magistrate Judge Blewitt) |
| NEW YORK DAILY NEWS, et al., | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I. Background**

The Plaintiff, Shemtov Michtavi, an inmate at the Low Security Correctional Institution at Allenwood ("USP Allenwood"), in White Deer, Pennsylvania, filed *pro se* this defamation action on March 27, 2006, naming as Defendants New York Daily News ("Daily News") and Mathew Kalman, a reporter employed by Daily News.[1]  (Doc. 1, p. 1).  The Plaintiff paid the requisite filing fee. (Doc. 9).  We must determine whether federal subject matter jurisdiction exists, and whether the Middle District of Pennsylvania is the proper venue in this case.[2]

---

[1] The Plaintiff is not complaining about any conditions of his confinement at USP Allenwood.  Nor is the Plaintiff challenging, under 28 U.S.C. § 2241, his federal judgment of conviction, which resulted in his confinement.

[2] A court may transfer venue under 28 U.S.C. § 1404(a) *sua sponte*. *Brown v. Woodring*, 174 F.Supp. 640, 644 (M.D. Pa. 1959). *Brown* states that "wisely it has not been attempted to catalogue the circumstances which will justify or require grant or denial of transfer. Given the statutory standards the decision is left to the sound discretion of the court." *Id*.

## II. Allegations of Complaint

The Plaintiff alleges that, on or about March 6, 2006, the Defendants Daily News and Kalman "devised a scheme to defame Plaintiff and to inflict emotional distress upon Plaintiff." (Doc. 1, p. 2). The Plaintiff avers that, on or about March 7, 2006, the Defendants Daily News and Kalman printed a story about the Israeli "mob," which described the Plaintiff as a "key lieutenant" in the Israeli mob and stated that the Plaintiff was "expected to give evidence against [Ze'ev] Rosenstein," which the Plaintiff denies.[3] *Id.* The Plaintiff alleges that the Defendants maliciously

---

[3] The story is entitled "Alleged Israeli Ecstasy King Is Reined in By Feds." http://www.nydailynews.com/news/wn_report/v-pfriendly/story/397094p-336586c.html. The story describes the Plaintiff's conviction and 20-year sentence in federal prison for drug offenses, including conspiracy to distribute the drug "ecstasy," and his status as "key lieutenant" to Ze'ev Rosenstein, "Israel's Public Enemy No. 1" and "an accused Israeli drug kingpin charged with smuggling millions of dollars to New York and other U.S. cities." *Id.* Many of the story's statements duplicate those ina Press Release from the Department of Justice (DOJ) regarding the case, which describes the Plaintiff as a "Rosenstein lieutenant." *See* Department of Justice, *Alleged Israeli Organized Crime Figure Arrested in Tel Aviv on U.S. Drug Trafficking Charges*, November 8, 2004, http://ww.usdoj.gov/usao/fls/Rosenstein.html.

We note that the Plaintiff's claims are indeed suspect.

"Although a defamation suit has profound First Amendment implications, it is fundamentally a state cause of action." *Tucker v. Fischbein*, 237 F.3d 275, 281 (Pa. 2001) (citation omitted). "Under Pennsylvania law, a defamation plaintiff bears the burden to show (1) the defamatory character of the communication, (2) its publication by the defendant, (3) its application to the plaintiff, (4) the understanding by the recipient of its defamatory meaning, and (5) the understanding by the recipient of it as intended to be applied to the plaintiff. 42 PA. CONS. STAT. ANN. § 8343(a)." *Id.*

"A public figure must adduce sufficient evidence to permit the conclusion that the defendant entertained serious doubts as to the truth of his publication in order to establish actual malice required under First Amendment to allow recovery in defamation action." *Id.* at 284 (citation omitted). "A court ruling on a motion for summary judgment in a defamation action brought by a public official or a public figure must be guided by *New York Times* 'clear and convincing' evidentiary standard in determining whether a genuine issue of actual malice exists–that is, whether the evidence presented is such that a reasonable jury might find that actual malice has been shown with convincing clarity." *Id.*

Further, "[u]nder Pennsylvania law, truth is an affirmative defense to a defamation

intended to spread "vicious 'lies'" about the Plaintiff "with wanton disregard for the truth" and urges that his "good name and reputation" have been harmed within his community and the state of Israel. (Doc. 1, p. 3). The Plaintiff further claims that the alleged actions of the Defendants are "libel per se." (Doc. 1, p. 5).

Without alleging that the Defendants were connected to his conviction for drug offenses, the Plaintiff further asserts that he was wrongfully convicted.[4] *Id.* While the Plaintiff does not claim that the Defendants have harassed, ridiculed, scorned, or threatened him, he contends that, as a result of the Daily News story, unnamed members of his community have done so. *Id.* The Plaintiff also claims that, because of the story, community members have greatly harmed and abused him in undescribed ways, calling him a "mob rat," "Sammy the Bull," and "Sammy the Rat."[5] *Id.*

The complaint also avers that the Defendants' "sophistication" gave them cause to know that the story would harm the Plaintiff and cause him damages, including emotional distress. (Doc. 1, p. 6). The Plaintiff claims that the Defendants intentionally falsely reported that he was "expected to give evidence against Rosenstein," which allegedly subjected him to threats, scorn, and ridicule. *Id.* The Plaintiff claims that he has been "great[ly] upset and severe[ly] emotional[ly]

---

action. 42 PA. CONS. STAT. ANN. § 8343(b)(1)." *Id.* at 287. "Under the First Amendment, [a] public figure who brings a defamation action must bear the burden of proving [the] falsity of [the] challenged statements." *Id.*
    Here, the Plaintiff may find it difficult to sufficiently substantiate his defamation suit in light of his federal conviction and the DOJ's ensuing press release.

[4]*See infra* n. 5.

[5]According to the Plaintiff, "Sammy the Bull" or "Sammy the Rat," refers to Sammy Gravano, who turned state witness against the mafia. (Doc. 1, p. 6).

3

distress[ed]," and has suffered from anxiety, sleeplessness, and headaches.[6]  (Doc. 1, p. 7).

For relief for the libel claims, the Plaintiff requests compensatory, punitive, and exemplary damages "in an amount greater than one million dollars."  (Doc. 1, p. 5).  For relief for the claims of intentional infliction of emotional distress, the Plaintiff also seeks compensatory, punitive, and exemplary damages "in an amount greater than one million dollars."  (Doc. 1, p. 7).

## III.  Discussion

### A. This Court has federal subject matter jurisdiction in this case based on foreign diversity.

The Plaintiff asserts that this Court has subject matter jurisdiction to hear his claims based on diversity.  We agree.

*McCracken v. Murphy* discusses the requirements for federal subject matter jurisdiction as follows:

> Generally, there is a presumption against the existence of federal jurisdiction, and the party invoking the federal court's jurisdiction bears the burden of proof.  13A Federal Practice and Procedure § 3522, at 62; *Basso v. Utah Power and Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  A plaintiff bears the burden of proving that diversity of citizenship exists and ordinarily must prove diversity of citizenship exists by a preponderance of the evidence.  *See Krasnov v. Dinan*, 465 F.2d 1298, 1301 (3d Cir. 1972).
>
> For purposes of determining diversity, state citizenship is equated with domicile.  *Krasnov*, 465 F.2d at 1300; *Parr v. Grenko*, 1993 WL 259327, *1, 1993 U.S. Dist. LEXIS 9122, at *3 (E.D. Pa. July 9, 1993).  Domicile, however, is not necessarily synonymous with residence;

---

[6]The Plaintiff does not indicate what amount of this distress is attributable to the Defendants and what amount is caused by his twenty-year term of incarceration in a federal prison for drug offenses.  (Doc. 1, p. 7).  *U.S. v. Michtavi*, 155 Fed.Appx. 433 (Fla. 2005).

> one can reside in one place and be domiciled in another. *Id*. Residence and an intent to make the place of residence one's home are required for citizenship and to establish a new domicile. *Id*. Although the analysis is necessarily case specific, courts have looked to certain factors, including state of employment, voting, taxes, driver's license, bank accounts and assets, and civic and religious associations in determining the citizenship of an individual. *See* Federal Practice & Procedure § 3612, at 530-31; *see also Juvelis v. Snider*, 68 F.3d 648, 654 (3d Cir. 1995); *Krasnov*, 465 F.2d at 1301; *Conners v. UUU Products*, No. 03-6420, 2004 WL 834726, *3, 2004 U.S. Dist. LEXIS 6417, at *8 (E.D. Pa. Mar. 15, 2004).

328 F. Supp. 2d 530, 532 (E.D. Pa. 2004). Diversity jurisdiction exists only in a judicial district where either any of the defendants reside, where a substantial part of the events giving rise to the claim occurred, or where any of the defendants is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. § 1391(a)

Further, "a prisoner remains a citizen of the state where he lived before being incarcerated unless he plans to live elsewhere once released." *McCracken*, 328 F. Supp. 2d at 532 (citations omitted). "For inmates, citizenship for diversity purposes is [in] the state which the inmate was domiciled prior to incarceration, unless the inmate plans to live elsewhere when he is released, in which event citizenship would be that state." *See Flanagan v. Shively*, 783 F. Supp. 922, 935 (E.D. Pa. 1992) (*aff'd without opinion*, 980 F.2d 722 (3d Cir. 1992); *see also Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1314 (11th Cir. 2002). "An inmate does not become a resident of a state merely by virtue of his incarceration there if he was a resident of another state before his incarceration and there is no indication that he intends to relocate to the state of incarceration upon his release." *Flanagan*, 783 F. Supp. at 935.

Here, the Plaintiff has met the burden of proof to show that he is not a domiciliary of this state for the purposes of federal jurisdiction based on diversity. (Doc. 1, p. 3, 5). The Plaintiff is an incarcerated alien in a federal prison here, with seemingly no other connection to Pennsylvania. (Doc. 1, p. 1). He was born and arrested in Israel, and his wife and children continue to live in Israel. (Doc. 1, p. 5). http://ww.usdoj.gov/usao/fls/Rosenstein.html. Further, he was convicted in a federal court in Florida. (Doc. 1, p. 3).

Therefore, the Plaintiff has established federal subject matter jurisdiction based on alienage, or foreign, diversity of citizenship under 28 U.S.C. § 1332(a)(2). As the Court stated in *Southern Cross*:

> Section 1332(a)(2) confers original jurisdiction on federal courts in civil actions in which the matter in controversy exceeds $75,000 between "citizens of a State and citizens or subjects of a foreign state." This tracks the language of Article III of the Constitution, which extends the federal judicial power to "all cases . . . between a State, or Citizens thereof, and foreign States, Citizens, or Subjects.

*Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 414. In our case, the Plaintiff is a citizen of Israel and the Defendants are New York citizens. Thus, alienage diversity jurisdiction exists in this case.

### B. The Middle District of Pennsylvania is an improper venue for this case.

We find that, although this Court has alienage diversity jurisdiction in this case, the Middle District of Pennsylvania is not the proper venue for this case due to the temporary nature of the Plaintiff's residence in a federal prison located in the Middle District of Pennsylvania. (Doc. 1, p. 1).

Venue is generally proper in "a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(a)(3). A newspaper's circulation of subscriptions in a state establishes sufficient minimum contacts within that state to establish personal jurisdiction. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Moreover, a venue is particularly appropriate if it is where the harm that the Plaintiff allegedly experienced occurred. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984).

Here, although this Court has personal jurisdiction over the Defendants, insofar as the circulation of their newspaper story in Pennsylvania was the source of the alleged harm[7], this case fails to meet the second requirement for proper venue under 28 U.S.C. § 1391(a)(3), because a more appropriate venue exists. For the convenience of parties and witnesses, a district court may transfer a civil action to any other district where it may have been brought. 28 U.S.C. 1404(a). District courts have broad discretion in deciding whether to transfer a case under 28 U.S.C. §1404(a). *Plum Tree v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973). Courts weigh private and public interest factors, including the plaintiff's and defendant's forum preference, where the claim arose, the convenience of the parties and witnesses, the familiarity of the trial judge with the applicable state law in diversity cases, and the practical considerations that could make the trial easy, expeditious, or inexpensive. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir.

---

[7] We assume *arguendo* that the Plaintiff's alleged harm occurred in Pennsylvania, although he describes threats, scorn, and ridicule in "his community," which presumably is Israel. (Doc. 1, p. 6, 7). The Plaintiff also refers to distress suffered by his wife and daughter, who reside in Israel. (*Id.*, p. 5).

1995); *High River Ltd. Partnership v. Mylan Laboratories, Inc.*, 353 F. Supp. 2d 487 (M.D. Pa. 2005).

In this case, an alternative venue exists in the Southern District of New York, the place where the alleged defamatory article was actually published, and the considerations weigh in favor of transferring this case to that venue, which is the most convenient forum for the Defendants and their witnesses. First, because they are residents of the Southern District of New York, that court has personal jurisdiction over the Defendants; thus, it is a proper alternative venue. *See Sunbelt Corp. V. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 31 (3d Cir. 1993). Second, the Defendants seemingly would prefer the Southern District of New York for its convenience to both them and their witnesses. Third, that district is more familiar with cases alleging libel against New York-based newspapers. *See e.g. Van Buskirk v. New York Times Co.*, 2000 WL 1206732, (S.D.N.Y. 2000); *Chaiken v. VV Pub. Corp.*, 119 F.3d 1018 (N.Y. 1997) (affirming that the District of Massachusetts's long-arm statute did not give that district personal jurisdiction over a New York-based newspaper and its Israeli correspondent in a libel case). Most importantly, although the Plaintiff is an inmate at a federal prison in the Middle District of Pennsylvania now, his choice of venue is unstable, as he may be removed within the discretion of the Federal Bureaus of Prisons (BOP) to another prison elsewhere at some time during his twenty-year term of incarceration, which would then result in neither party residing in or having any remaining ties to the Middle District of Pennsylvania.[8] Thus,

---

[8]As this Court recently stated in *Shumate v. U.S.*, "the BOP has the power pursuant to 18 U.S.C. § 3621(b) to 'designate the place of the prisoner's imprisonment,' and for that purpose to 'designate any available penal or correctional facility whether maintained by the Federal Government or otherwise.'" 2006 WL 83506, *4 (M.D. Pa. 2006) (citation omitted).

This Court in *Shumate* also noted that "it is well established that a federal prisoner

the Plaintiff's sole connection with the Middle District of Pennsylvania is his incarceration here, which we find to be a tenuous basis for purposes of establishing venue with this Court.

Therefore, we shall recommend that this case be transferred to the Southern District of New York.

**IV. RECOMMENDATION**

Based on the foregoing, it is respectfully recommended that the Plaintiff's action against Defendants Daily News and Kalman be transferred to the U.S. District Court for the Southern District of New York.

                                                **s/ Thomas M. Blewitt**
                                                **THOMAS M. BLEWITT**
                                                **United States Magistrate Judge**

**Dated: July 19, 2006**

---

generally has no constitutional right to placement in any particular penal institution. *See Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S. Ct. 1741, 75 L. Ed. 2d 813 (1983) (prisoner has no constitutional right to be incarcerated in any particular facility or state). In *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S. Ct. 2543, 49 L. Ed. 2d 466 (1976), the Supreme Court held that "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not itself subject an inmate's treatment by prison authorities to judicial oversight." *Id.* at *4, n. 5.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHEMTOV MICHTAVI, | : | CIVIL ACTION NO. **4:CV-06-0628** |
| Plaintiff | : | (Judge Jones) |
| v. | : | (Magistrate Judge Blewitt) |
| NEW YORK DAILY NEWS, et al., | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **July 19, 2006.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof. Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections. The briefing
> requirements set forth in Local Rule 72.2 shall apply. A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge. The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                              **s/ Thomas M. Blewitt**
                                              **THOMAS M. BLEWITT**
                                              **United States Magistrate Judge**

**Dated: July 19, 2006**